UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| **REVA SMITH, Administrator of the Estate of ROBERT FUGATE,** | **CIVIL ACTION NO. 6:17-119-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **NANCY A. BERRYHALL, Acting Commissioner of Social Security,** | |
| Defendant. | |

*** *** ***

This matter is before the Court on cross-motions for summary judgment (DE 5; 11.) The Plaintiff, Reva Smith, acting as administrator of the estate of Robert Fugate, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her late father's claim for Disability Insurance Benefits. The Court, having reviewed the record, will affirm the Commissioner's decision because it is supported by substantial evidence and was decided by the proper legal standards.

## BACKGROUND

An Administrative Law Judge ("ALJ") denied Fugate's claim (Administrative Record ("AR") 28) and Smith, acting as administrator of Fugate's estate, now petitions this Court to review the decision of the presiding ALJ. The Court's review of the Commissioner's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

1

In denying Fugate's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that the claimant had not engaged in substantial gainful activity since December 1, 2011, the alleged onset date. (AR at 19.)

At step two, the ALJ determined that Fugate suffered from the following severe impairments: degenerate disk disease of the lumbar spine and chronic obstructive pulmonary disease ("COPD"), (20 CFR 404.1520(c)) (AR at 19.) Conversely, the ALJ classified Fugate's diabetes mellitus, dysphagia, and reoccurring shoulder pain as nonsevere impairments. (AR at 20.)

At step three, the ALJ found the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR pt. 404, subpt. P, app. 1 (20 CFR 404.1520(d), 404.125, and 404.1526). (AR at 20.)

The ALJ then determined that Fugate had the residual functional capacity (RFC) to perform "medium work" subject to certain limitations. (AR at 20.) First, Fugate could only lift and carry 50 pounds on occasion, and 25 pounds frequently. Second, the ALJ concluded that Fugate could only walk, stand, or sit for six out of the eight hours of a standard work day. (AR at 20.) Lastly, the ALJ noted that Fugate ought to "avoid concentrated exposure to full body vibration, and to respiratory irritants such as fumes, odors, dusts, and gases." (AR at 20.)

At step four, the ALJ found that Fugate was able to perform his past relevant work as a production worker pursuant to 20 CFR 404.1565 and 416.965 (AR at 27.)

At step five, the ALJ determined that in addition to his past work, Fugate was able to perform other jobs that exist in significant numbers in the national economy. (AR at 29.) Accordingly, the ALJ concluded that Fugate was not disabled.

## ANALYSIS

Smith, acting as the administrator of Fugate's estate, raises three objections to the ALJ's decision. Smith first argues that the ALJ failed to consider Fugate's diabetes as a distinct impairment. (DE 5.) Second, Smith contends that the ALJ improperly discounted portions of examining physician, Dr. Williams' April 2012 opinion. (DE 5.) And finally, Smith's third argument suggests that the ALJ erred in failing to consider transferability of job skills when evaluating whether Fugate could return to his past relevant work. (DE 5.) The Court agrees with the ALJ's determinations on all three of these issues.

### I. The Failure to Designate Fugate's Diabetes as a Severe Impairment Is Not Legally Relevant.

Smith argues that the ALJ erred in failing to find that Fugate's diabetes constituted a severe impairment at step two of the sequential evaluation process. (DE 5.) The ALJ did find, however, that Fugate suffered from other severe impairments at step two: degenerative disk disease of the lumbar spine and COPD (AR at 19.) Having found these severe impairments, the ALJ was then required to proceed to the remaining steps of the evaluation. And in making the determination, the ALJ was required to consider "limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe." *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)). Therefore, "so long as the ALJ considered all of the individual's impairments when assessing how much work the claimant can do, the 'failure to find additional severe impairments . . . does not constitute reversible error.'" *Id.* (quoting *Fisk*, 253 F. App'x at 583).

The issue then becomes whether the ALJ adequately considered Fugate's diabetes when evaluating his overall employment capacities. The presiding ALJ noted that while Fugate suffered from two severe impairments, his remaining conditions, including diabetes, were not severe. (AR

at 20.) In support of this conclusion, the ALJ referenced the treating physician, Dr. Hamilton's examination notes, which indicated that Fugate's diabetes condition was being controlled with treatment. (AR at 24–25.) The ALJ specifically observed in his opinion that by August of 2015, Fugate's hypertension, posture, and blood sugar level were all improving. (AR at 25.) Given the ALJ's repeated references to Fugate's diabetes in his opinion, it is apparent that he considered the impairment and its effect on Fugate's ability to work. As a result, Smith's contention that the ALJ did not adequately consider Fugate's diabetes is without merit.

**II. The ALJ Did Not Err in Discounting the Opinion of Dr. Williams.**

Medical opinion evidence often includes reports from treating physicians, examining physicians, and nonexamining physicians. *Shader v. Colvin*, No. CIV.A. 3:14-29-KKC, 2015 WL 476311, at *4 (E.D. Ky. Feb. 5, 2015). The "ALJ must discuss the weight afforded to the treating physician's opinion and the rationale supporting the ALJ's determination." *Id.* And, the ALJ is to evaluate other medical opinions based on the amount of medical evidence supporting the opinion, the consistency of the opinion, whether the opinion is from a specialist, and other factors that tend to support or contradict the opinion. *Id.*

This case involves peculiar circumstances. The treating physician, Dr. Hamilton, did not issue an opinion regarding Fugate's functional limitations. (AR at 26.) Instead, only the examining physician, Dr. Williams, and the state medical examiner, Dr. Irlandez, rendered conclusions on the matter. As the ALJ noted, Dr. Williams examined Fugate only once and Dr. Irlandez did not see Fugate in person. Rather, his conclusion was based solely on a review of the record.

In developing Fugate's residual functional capacity ("RFC") therefore, the ALJ weighed the opinions of the examining and nonexamining physicians, but only the treatment notes of the treating physician, Dr. Hamilton. And in the absence of an opinion from the treating physician, the

ALJ gave significant weight to the April 2012 opinion of the examining physician, Dr. Williams. There was however, one caveat—the ALJ refused to give weight to Dr. Williams' specific finding that Fugate was likely to have trouble performing tasks that required the lifting and carrying of objects. (AR at 26.) The ALJ reasoned that this conclusion conflicted with the medical record. In particular, the ALJ referred to this portion of Dr. Williams' opinion as an "overestimation of the severity of the claimant's restrictions and limitations" and proclaimed that it was "based only on a 'snapshot' of the claimant's functioning." (AR at 26.) The Court concludes that there is substantial evidence in the record to support the ALJ's determination.

Dr. Williams' conclusion that Fugate would have trouble lifting and carrying objects seems to conflict with his own notes from that examination. Dr. Williams specifically observed that Fugate exhibited normal posture and had zero difficulty getting on and off the examination table. (AR at 424.) Dr. Williams also categorized Fugate's strength in his extremities at 5/5 and noted that his range of motion tests were normal, subject to a few exceptions. These exceptions included moderate limitations regarding lumbar flexion-extension and right straight leg raising. (AR at 427.) In sum, the personal observations of Dr. Williams' tend not to support the severe limitations found in his conclusion.

The opinion of Dr. Williams also conflicts with the medical reports of Dr. Hamilton, Fugate's treating physician. Between September of 2014 and August of 2015, Dr. Hamilton examined Fugate on multiple occasions. (AR at 445; 545.) In his treatment notes from these encounters, Dr. Hamilton repeatedly suggested that Fugate's conditions were improving with treatments (AR at 447–482). In addition, an MRI and several x-rays taken from this period showed mild to moderate degenerative disk disease (AR at 442) and no signs of herniated disk or central

spinal stenosis (AR at 482.) These findings are thus also inconsistent with the opinion of Dr. Williams.

Dr. Irlandez, the state medical consultant, concluded that Fugate would be able to frequently climb stairs, balance, stoop, kneel, crouch, and crawl. (AR at 134.) These findings contradict the opinion of Dr. Williams, which attributed more severe limitations to Fugate. The Court recognizes that as a nonexamining physician, the opinion of Dr. Irlandez does not traditionally receive controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 246 (6th Cir. 2007). That being said, Irlandez's conclusion aligned with the notes of the treating physician and with the aggregate medical record. It was therefore reasonable for the ALJ to give Irlandez's opinion considerable if not significant weight. *See* SSR 96-6P (S.S.A. July 2, 1996).

In total, it is the ALJ's duty to resolve conflicts in the medical evidence record. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's determination must stand if supported by substantial evidence, irrespective of whether the reviewing court would have resolved the conflicts in a different manner. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983). In the instant case, the record is replete with inconsistencies as to the true nature of Fugate's functional limitations. Though the examining physician noted considerable limitations, Dr. Hamilton's treatment notes and the opinion of Dr. Irlandez suggested that Fugate's conditions were less severe. As a result, the determinations made by the ALJ were reasonable, supported by substantial evidence, and made under the proper legal standards.

**III. The ALJ Was Not Required to Determine the Existence of Transferable Skills.**

Plaintiff argues that Fugate's advanced age required the ALJ to make a determination on transferability before examining whether Fugate could perform past work. (DE 5.) This argument

6

is misguided. The Sixth Circuit has concluded that the Grid Rules only apply when a claimant "of advanced age is found to be capable only of sedentary or light work." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 847 (6th Cir. 2004). Put differently, contemplation of transferable skills of a person of advanced age is only made when (1) the person is severely impaired and (2) the person cannot perform medium work. *See id.* Here, the ALJ ruled that Fugate was capable of *medium work*, thus rendering transferability irrelevant. *See id.*

## **CONCLUSION**

For all these reasons, **IT IS HEREBY ORDERED** that:

(1) The Plaintiff's motion for summary judgment (DE 5) is **DENIED**;

(2) The Defendant's motion for summary judgment (DE 11) is **GRANTED**;

(3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) A judgment will be entered contemporaneously with this order.

Dated September 19, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY